Estate of Howard J. Murphy, Deceased, Charles R. Murphy, Executor v. Commissioner.
Estate of Murphy v. Commissioner
Docket No. 122-65.
United States Tax Court
T.C. Memo 1966-255; 1966 Tax Ct. Memo LEXIS 28; 25 T.C.M. (CCH) 1314; T.C.M. (RIA) 66255; November 23, 1966
*28 Howard W. Boggs, for the petitioner. Erwin L. Stuller, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined a deficiency in the estate tax of petitioner in the amount of $1,426.27. The only issue presented is whether petitioner's decedent, howard J. Murphy, owned 280 shares of Murphy, Inc., stock at the time of his death as determined by respondent or whether he owned at that time only 226 shares as reported in the estate tax return. Findings of Fact All stipulated facts are found. Howard J. Murphy, hereinafter referred to as the decedent, died September 12, 1961, a resident of Toledo, Ohio. The Federal estate tax return of the estate of Howard J. Murphy was filed with the district director of internal revenue, Cleveland, Ohio, on December 11, 1962. On September 13, 1961, the will of the decedent was admitted to probate in the Probate Court of Lucas County, Ohio, and on that day Charles R. Murphy, son of the decedent who resides in Toledo, Ohio, was duly appointed executor of the estate of Howard J. Murphy by that court. Petitioner conceded the correctness of the respondent's determination of *29 the tax set forth in the notice of deficiency concerned herein with the sole exception that the respondent's determination that 54 additional shares of Howard J. Murphy, Inc., an Ohio corporation, be included in the decedent's gross estate remains in issue. Howard J. Murphy, Inc., was incorporated in the State of Ohio on December 3, 1957. Its purpose was to hold title to and manage a building containing decedent's and his son's offices. Decedent was a medical doctor and his son a dentist. Both maintained offices in the building and both lived together in an apartment located on one floor thereof. In 1960 the father was president and treasurer of the corporation and the son was its secretary. The father wrote the checks of the corporation and paid its bills. In December of 1960 the board of directors of the corporation declared a dividend of 25 cents per share upon its outstanding stock. A gift tax return was filed thereafter at an undisclosed date and the tax paid thereon. At the time of preparation of the return decedent informed the accountant for the corporation that he had made a gift of 27 shares of Murphy, Inc., stock to each of his two children. A form 1099 was filed for *30 the corporation reporting the payment of $56.50 in dividends to decedent. Prior to December 1960, the decedent had made gifts of shares in the corporation to his son, Charles R. Murphy, and to his daughter, Gloria Lee Yeasting, as follows: Number of
Number of
shares to
shares to
Date of gift
daughter
son
December 31, 1957
30
30
February 6, 1958
20
20
The stock transfer records of the corporation indicate that of the original issue of 200 shares on December 26, 1957, stock certificate number 1 was issued to the decedent for 198 shares, stock certificate number 2 for one share was issued to a nominee and later assigned to the decedent, and stock certificate number 3 for one share was also issued to a nominee and later assigned to the decedent. The stock transfer records of the corporation show that on December 31, 1957, stock certificates numbered 1, 2, and 3 representing 200 shares were transferred on the records of the corporation and in their place stock certificate number 4 representing 140 shares of stock was issued to the decedent, stock certificate number 5 representing 30 shares of stock was issued to the daughter, and stock certificate *31 number 6 representing 30 shares of stock was issued to the son. At this time stock certificates numbered 4, 5, and 6 represented all of the 200 outstanding shares of the corporation. The stock transfer records of the corporation show that on February 6, 1958, stock certificate number 4 representing 140 shares was transferred on the records of the corporation and stock certificate number 7 representing 20 shares was issued to the daughter, stock certificate number 8 representing 20 shares was issued to the son, and stock certificate number 9 representing 100 shares was issued to the decedent. At this time stock certificate numbers 5, 6, 7, 8, and 9 represented the 200 outstanding shares of the corporation. The stock transfer records of the corporation show that on October 21, 1959, stock certificate number 10 representing 180 shares of the corporation was issued to the decedent and that on August 16, 1960, stock certificate number 11 representing 100 shares was issued to the decedent to replace stock certificate number 9 which had been lost. Neither stock certificate number 10 nor 11 of the corporation had been signed by the decedent for assignment or transfer as of the date of *32 his death. These certificates represent the decedent's ownership of 280 shares of stock of the corporation so far as is shown by its books. The estate tax return filed by the petitioner reported that the decedent at the time of his death owned only 226 shares of such stock. Stock certificate numbers 12 and 13 were prepared by decedent's attorney in pursuance of decedent's instructions and the name of the son inserted as the owner in one and that of the daughter in the other. Each was for 27 shares. The attorney delivered the certificates so prepared to decedent at his (decedent's) office with instructions for decedent to endorse his certificate number 10 on its reverse side and deliver the same to the attorney. In the latter part of December 1960, decedent handed the certificate bearing the son's name as owner to the son. Neither of the certificates was executed by the decedent as president nor the son as secretary of the corporation. The son placed the certificate bearing his name in a personal lockbox and did not again see the certificate until after his father's death. The certificate bearing the daughter's name was also found in decedent's effects after his death. This certificate *33 was also unexecuted by either decedent or his son as officers of the corporation. Neither of decedent's certificates representing 280 shares of the corporation was at any time endorsed by him for any transfer purpose. The instruction to deliver his certificate number 10 to his attorney was not carried out by decedent, but both certificate numbers 10 and 11 remained in his possession to the time of his death and were found in his effects in his living quarters subsequent thereto. Prior to his death decedent had the general intention to gradually distribute his estate and particularly his Murphy, Inc., stock in equal amounts to his son and daughter. Decedent had no specific present intention to make a gift of 27 shares of stock to either his son or daughter at the time of handing a certificate for 27 shares to his son in December of 1960 or thereafter to the date of his death. At the time of his death, the decedent owned two stock certificates representing 280 shares of the corporation, the value of which is includable in the decedent's gross estate. Opinion As petitioner states its position on brief, in its opening statement at the hearing, and in view of the evidence before *34 us, we are of the opinion petitioner has failed to meet the real issue in this case. The real issue as we understand it is whether or not the decedent at the time of his death owned 280 shares of Murphy, Inc., stock as found by respondent in his determination of deficiency or 226 shares as reported in the estate tax return in controversy. As petitioner states the issue, it is limited to the question whether the decedent had made an inter vivos gift of 54 shares of Murphy, Inc., stock to his two adult children. The only competent evidence petitioner has presented to us relates to the question whether or not such a gift was made. We find that it is immaterial whether the gift was made unless the 54 shares gifted were shown to be a part of the 280 shares owned by decedent for only in that event could it be held that at the time of his death he owned only 226 shares as petitioner contends. The records of the corporation were not offered in evidence. Such records would have been material in determining the number of shares owned by decedent at his death. Because they were not produced, we are justified in concluding that they would have indicated decedent owned 280 shares at that time. *35 This, of course, is not conclusive of the matter standing by itself, particularly in the face of competent evidence to the contrary. No such contrary evidence appears in the record which satisfies us that decedent owned any fewer sharesafter his death than before. There is evidence which leads us to believe he may have intended at some time to issue 54 shares of corporate stock, in equal amounts, to his two children, but there is insufficient evidence to establish that his intention was carried out even to the point of delivery of shares in that amount to either child. At most it can be said only that he handed one certificate of 27 shares to his son, who was secretary of the corporation. This certificate, together with another for 27 shares, had been prepared and delivered to him by his attorney with instructions to deliver his own certificate number 10 to his attorney. We conclude that this instruction was given for the purpose of canceling the certificate and reissue of certificates to decedent in the amount of 226 shares. We think the instruction at most was a mere reminder, for the record indicates he must have been well aware of the necessary procedure for effectuating the transfer *36 of shares on the books of the corporation inasmuch as he had carried out the same procedure in making gifts of stock of the corporation to his children in 1957 and 1958. It is clear from the evidence that decedent had the general purpose of gradually distributing his shares of stock in the corporation to his children, but the record is not at all clear that he had a present intention of doing so with respect to the two certificates here in controversy. He made no delivery, actual or symbolic, to his daughter. We cannot find that he made a delivery of either kind to his son. While it is true that a stock certificate in form was handed to the son, it was not a valid certificate in that it had not been executed by decedent as president or his son as secretary of the corporation, and further, upon that occasion, there were no words uttered of specific donative intent. For all that appears of record, decedent may have handed the certificate to his son for the purpose of obtaining the son's signature thereon as secretary of the corporation. The son testified that on the occasion of his father's handing the certificate to him, the father merely expressed his general intent to gradually transfer *37 his estate to his children. We have concluded however that even this expression was made upon an earlier occasion and that the son is confused in that respect. It seems incongruous to us that, having made two prior gifts of this stock in 1957 and 1958, the father would not state his purpose for the gifts until 1960, as the son has testified. Assuming, arguendo, that decedent's handing his son an unexecuted stock certificate (either by himself as president or his son as secretary) of the corporation constituted a sufficient delivery thereof for estate or gift tax purposes, the record still affords no explanation as to why, with an intention to distribute shares equally and at the same time to both his children, decedent "delivered" only to the son. The evidence supports only one conclusion. Whatever decedent's reasons were he did not carry out his stated intention of making a gift out of his 280 shares of Murphy, Inc., stock to his son and daughter or either of them in 1960. Petitioner stresses the fact of the declaration of a dividend by the corporation in 1960 as being weighty evidence of a gift of 27 shares each to the children. We think the evidence in that respect falls far *38 short of such proof. There is no competent evidence of record showing payment of such a dividend to anyone. Such evidence as appears tending toward such payment indicates that the corporation in its form 1099 reported payment only to decedent and no mention is made of payment to either child. No canceled checks were offered to demonstrate payment of the dividends declared and we conclude from that, that no such payments were made. It is also noteworthy that there is no indication on the record that the decedent or either of his children reported the receipt of such dividends upon any income tax return. We are unable to conclude that decedent at any time in 1960 made a gift of any portion of his 280 shares of Murphy, Inc., stock to either of his children. Decision will be entered for the respondent.